# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Tuan Dao,<br><br>        Plaintiff,<br><br>vs.<br><br>Trans Union, LLC, Experian Information Solutions, Inc., Equifax Information Services, LLC, CSC Credit Services, Inc., Cellco Partnership d/b/a Verizon Wireless, GE Capital Retail Bank, and Comenity Bank,<br><br>        Defendants. | Civil File No.: _____<br><br><br>**<u>COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1. This action for damages is based on Defendants' false reporting on Plaintiff's credit reports of a public record, and multiple credit cards that were the result of identity theft and fraud, and failures to follow reasonable procedures and failures to conduct reasonably investigations with respect to such information. This Compliant is for actual, statutory, and punitive damages, plus attorney's fees and costs pursuant to the Fair Credit Reporting Act ("FCRA"), and state common law claims.

## <u>JURISDICTION</u>

2. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., jurisdiction of this Court arises under 28 U.S.C. § 1331, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

3.    Venue is proper in this Court because a substantial part of the claim arose in Minnesota, and all Defendants "reside" in Minnesota, as that term is used in 28 U.S.C. § 1391.

## PARTIES

4.    Plaintiff Michael Tuan Dao ("Dao" or "Plaintiff") is a natural person residing in the County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.    Defendant Trans Union, LLC ("Trans Union"), is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.C.S. § 1681a(f).

6.    Defendant Experian Information Solutions, Inc. ("Experian"), is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

7.    Defendant Equifax Information Services, LLC ("Equifax"), is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

8.    Defendant CSC Credit Services, Inc. ("CSC"), is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

9.    Defendant Cellco Partnership d/b/a Verizon Wireless ("Cellco Partnership"), does business in Minnesota, and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

10.    Defendant GE Capital Retail Bank ("GECRB"), does business in Minnesota, and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

11.    Defendant Comenity Bank ("Comenity"), does business in Minnesota, and is "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

12.    In November 2010, Plaintiff received a credit card that he had not applied for in the mail from Citibank.

13.    Plaintiff called Citibank to cancel the credit card, and he was told by Citibank that there were more applications for credit cards that he did not apply for that were being processed by Citibank.

14.    Citibank told Plaintiff that the information on these credit applications, such as his driver's license number, did not match his actual driver's license number.

15.    Plaintiff filed a fraud alert with Trans Union, Equifax, and Experian.

16.    Plaintiff found out that someone had submitted a change of address under his name.

17.    Plaintiff filled out a mail theft report with the United States Postal Service.

18.    Plaintiff filed a police report with the Minneapolis Police Department.

19.    Plaintiff tried to follow up with various credit card companies to inform them that he did not apply for the credit cards.

20.    Plaintiff went to his parents' home and found numerous credit cards under his name in his brother's room.

21.     The fraudulent credit cars were sent to debt collectors, and when Plaintiff received telephone calls from the debt collectors he informed them that he was a victim of identity theft, but the debt collectors refused to acknowledge his dispute.

22.     In December 2011, Plaintiff sent a dispute letter to Experian.

23.     In the dispute letter Plaintiff included the following information:

- A copy of his driver's license;

- His social security number;

- His date of birth;

- The police report that he filed with the Minneapolis Police Department;

- Confirmation of the filing of a fraud alert with Equifax;

- Confirmation of the fraud alert that was filed with Experian;

- Confirmation from Kohl's that someone fraudulently obtained a Kohl's card in his name;

- Confirmation from Bank of America, N.A. that he was the victim of identity theft;

- A copy of the criminal charges that had been filed against his brother;

- A copy of mail theft report confirmation from the United States Postal Service; and

- A copy of his Experian credit report.

24.   Plaintiff provided a detailed explanation about how he was the victim of identity theft in his December 2011 dispute letter, and told Experian to delete the circled accounts on his credit report.

25.   Plaintiff circled the following accounts on his Experian credit report in his December 2011 dispute letter:

- GE Capital Walmart (GECRB) account number 603220143491XXXX;

- Verizon Wireless (Cellco Partnership) account number 9865627770XXXX;

- Verizon Wireless (Cellco Partnership) account number 9865627880XXXX;

- Wells Fargo Financial 577442194032XXXX; and

- Victoria's Secret (Comenity) 9628XXXX.

26.   In January 2012, Plaintiff received multiple letters from Experian in response to his December 2011 dispute letter.

27.   The letters from Experian indicated Experian refused to block the fraudulent credit information from Plaintiff's Experian credit report.

28.   On January 30, 2012, Experian notified Plaintiff of the results of the re-investigation.

29.   In the letter dated January 30, 2012, Experian indicated that the fraudulent accounts with GECRB, Comenity, and the two accounts with Cellco Partnership remained in Plaintiff's credit report.

30.   In April 2012, Plaintiff sent another dispute letter to Experian.

31.   In the dispute letter dated April 24, 2012, Plaintiff, *inter alia*, wrote the following:

I have included a copy of my Minnesota Driver's License which displays my current address. I have lived at the same address for the last two years. I have also included a copy of the identity theft report that I filed with the Minnesota Police Department. Beginning on about October 2010 and November 2010 my brother, Dien Dao had stolen my identity and started opening financial accounts under my name. The following is fraudulent and should be blocked from my credit report . . . .

32.  Plaintiff disputed the accounts with Comenity, Wells Fargo Financial, Equable Ascent Financial, GECRB, and the two accounts with Cellco Partnership.

33.  Plaintiff also included a letters from Kohl's, Bank of America, N.A., and Wells Fargo Financial that indicated that Plaintiff was the victim of identity theft.

34.  In May 2012, Experian sent a letter to Plaintiff.

35.  In the letter dated May 14, 2012, Experian indicated that it would not block any of the fraudulent accounts from Plaintiff's credit report.

36.  In the letter dated May 14, 2012, Experian indicated that it would conduct an investigation in response to Plaintiff's dispute.

37.  Experian notified Comenity, Wells Fargo Financial, Equable Ascent Financial, GECRB, and Cellco Partnership of Plaintiff's dispute, or in the alternative, Experian failed to notify Comenity, Wells Fargo Financial, Equable Ascent Financial, GECRB, and Cellco Partnership of Plaintiff's dispute.

38.  After the re-investigation, the fraudulent accounts with Comenity, GECRB, and the two accounts with Cellco Partnership remained on Plaintiff's credit report.

39.     In December 2011, Plaintiff sent a dispute letter to Equifax.

40.     In the dispute letter Plaintiff included the following information:

- A copy of his driver's license;

- His social security number;

- His date of birth;

- The police report that he filed with the Minneapolis Police Department;

- Confirmation of the filing of a fraud alert with Equifax;

- Confirmation of the fraud alert that was filed with Experian;

- Confirmation from Kohl's that someone fraudulently obtained a Kohl's card in his name;

- Confirmation from Bank of America, N.A. that he was the victim of identity theft;

- A copy of the criminal charges that had been filed against his brother;

- A copy of mail theft report confirmation from the United States Postal Service; and

- A copy of his Equifax credit report.

41.     Plaintiff provided a detailed explanation about how he was the victim of identity theft in his December 2011 dispute letter, and told Equifax to delete the circled accounts on his credit report.

42.     Plaintiff circled the following accounts on his Equifax credit report in his December 2011 dispute letter:

- GECRB/Walmart (GECRB) account number 603220143491XXXX;

- Verizon Wireless (Cellco Partnership) account number 9865627770XXXX;

- Verizon Wireless (Cellco Partnership) account number 9865627880XXXX;

- Wells Fargo Financial 577442194032XXXX; and

- WFFNB/VS (Comenity) 9628XXXX.

43. Defendants Equifax and CSC share the same database.

44. Equifax and CSC are each responsible for following reasonable procedures to assure maximum possible accuracy whenever they prepare consumer reports from information in their shared database.

45. CSC and/or Equifax notified GECRB, Comenity, Cellco Partnership, and Wells Fargo Financial of Plaintiff's dispute, or in the alternative, CSC and/or Equifax failed to notify GECRB, Comenity, Cellco Partnership, and Wells Fargo Financial of Plaintiff's dispute.

46. On or about January 3, 2012, CSC notified Plaintiff of the results of the re-investigation of Plaintiff's December 2011 dispute.

47. In the letter dated January 3, 2012, CSC indicated that the GECRB, Comenity, Cellco Partnership, and Wells Fargo Financial account had been deleted from the Plaintiff's credit report as a result of the re-investigation.

48. A furnisher, such as, GECRB, Comenity, and Cellco Partnership must notify all consumer reporting agencies that operate on a nationwide basis of inaccurate information, and to which it is reporting the inaccurate information too, if a reinvestigation results in the deletion or modification of inaccurate information on

Plaintiff's credit file, or if a furnisher receives notice from a consumer reporting agency that the consumer reporting agency is deleting or modifying an inaccurate tradeline.

49.  A furnisher must also notify all consumer reporting agencies that operate on a nationwide basis if the furnisher chooses to forego an investigation and concede the consumer's dispute.

50.  On or about April 24, 2012, Plaintiff sent another dispute letter to CSC/Equifax.

51.  In the dispute letter dated April 24, 2012, Plaintiff wrote the following:

I have included a copy of my Minnesota Driver's License which displays my current address.  I have lived at the same address for the last two years.  I have also included a copy of the identity theft report that I filed with the Minnesota Police Department.  Beginning on about October 2010 and November 2010 my brother, Dien Dao had stolen my identity and started opening financial accounts under my name.  The following is fraudulent and should be blocked from my credit report:

- Equable Ascent Financial, LLC, Account Number GE Consumer-579, Balance $972.00.
  - This account does not relate to any transaction by me.  This account is a collection account for the account with Walmart that was opened by my brother Dien Dao.

52.  Plaintiff also included letters from Wells Fargo Financial, Kohl's and Bank of America, N.A., which indicated that Plaintiff was the victim of identity theft.

53.    In May 2012, Plaintiff received a series of letters from CSC in response to Plaintiff's April 2012 dispute letter.

54.    On or about May 25, 2012, CSC indicated in a letter that the account with Equable Ascent Financial GE Consumer – 579 was deleted from Plaintiff's credit file as a result of a reinvestigation.

55.    In December 2011, Plaintiff sent a dispute letter to Trans Union.

56.    In the dispute letter Plaintiff included the following information:

- A copy of his driver's license;

- His social security number;

- His date of birth;

- The police report that he filed with the Minneapolis Police Department;

- Confirmation of the filing of a fraud alert with Equifax;

- Confirmation of the fraud alert that was filed with Experian;

- Confirmation from Kohl's that someone fraudulently obtained a Kohl's card in his name;

- Confirmation from Bank of America, N.A. that he was the victim of identity theft;

- A copy of the criminal charges that had been filed against his brother;

- A copy of mail theft report confirmation from the United States Postal Service; and

- A copy of his Trans Union credit report.

57.   Plaintiff provided a detailed explanation about how he was the victim of identity theft in his December 2011 dispute letter, and told Trans Union to delete the circled accounts on his credit report.

58.   Plaintiff circled the following accounts on his Trans Union credit report in his December 2011 dispute letter:

- GECRB/Walmart (GECRB) account number 603220143491XXXX;
- Verizon Wireless (Cellco Partnership) account number 9865627770XXXX;
- Verizon Wireless (Cellco Partnership) account number 9865627880XXXX;
- Wells Fargo Financial 577442194032XXXX; and
- WFFNB/VS (Comenity) 9628XXXX.

59.   On or about January 4, 2012, Trans Union notified Plaintiff that it was not going to block any of the fraudulent accounts as requested by Plaintiff.

60.   Trans Union did indicate that they would conduct a re-investigation of the fraudulent accounts in response to Plaintiff's dispute letter.

61.   The fraudulent accounts with Comenity, Wells Fargo Financial, and the two accounts with Cellco Partnership remained on Plaintiff's credit report.

62.   On or about April 24, 2012, Plaintiff sent another disputer letter to Trans Union.

63.   In the dispute letter dated April 24, 2012, Plaintiff, *inter alia*, wrote the following: I have included a copy of my Minnesota Driver's License which displays my current address.  I have lived at the same address for the last two years.  I have also included a copy of the identity theft report that I filed with the Minnesota Police Department.  Beginning on about October 2010 and November 2010 my

brother, Dien Dao had stolen my identity and started opening financial accounts under my name.  The following is fraudulent and should be blocked from my credit report . . . .

64.   Plaintiff disputed the accounts with Comenity, Wells Fargo Financial, GECRB, and the two accounts with Cellco Partnership.

65.   Plaintiff also included letters from Kohl's, Bank of America, N.A., and Wells Fargo Financial that indicated that Plaintiff was the victim of identity theft.

66.   On May 15, 2012, Trans Union sent a letter to Plaintiff indicating that Trans Union would not block the fraudulent accounts from Plaintiff's credit report.

67.   Trans Union did indicate that it would conduct a reinvestigation of the fraudulent accounts in response to Plaintiff's dispute letter.

68.   After the re-investigation, the fraudulent accounts with Comenity, GECRB, and the two accounts with Cellco Partnership remained on Plaintiff's credit report.

69.   In April 2013, Plaintiff brought a motion to vacate a default judgment against him in the amount of $149,435.30 because Plaintiff was not a party to the contract and because Plaintiff was never served with the lawsuit.

70.   Plaintiff's sister forged his signature on the contract that was the basis for the judgment.

71.   The attorney who represented Plaintiff's sister in the lawsuit produced a letter from Plaintiff's sister in response to a subpoena, in which his sister wrote the following:

Now my brother found out they place a judgment in his name at the city.  I have told you I initial his name and signed it and they knew that.  They said it will be just for the qualification as a secondary because he had better credit. . . .  Please help me with this because my brother cannot by a car and he's very mad.

72.   Plaintiff also hired a handwriting expert who confirmed that the Plaintiff's signature on the lease was forged.

73.   On August 8, 2013, the Honorable Ann Leslie Alton signed an order vacating the judgment against Michael Dao and voiding the judgment against Plaintiff.

74.   In about September 2013, Plaintiff sent another dispute letter to Experian.

75.   Plaintiff included a copy of the order vacating the default judgment against him, and his previous dispute letters, as well as, the documents that were attached to his previous dispute letters.

76.   Plaintiff also included a copy of his current credit report.

77.   Plaintiff requested that Experian delete the fraudulent accounts with Comenity, GECRB, and the two accounts with Cellco Partnership.

78.   In about September 2013, Plaintiff sent another dispute letter to Trans Union.

79.   Plaintiff included a copy of the order vacating the default judgment against him, and his previous dispute letters, as well as, the documents that were attached to his previous dispute letters.

80.   Plaintiff also included a copy of his current credit report.

81.   Plaintiff requested that Trans Union delete the judgment that was vacated by the Honorable Ann Leslie Alton.

82.     In September 2013, Plaintiff sent another dispute letter to Equifax.

83.     Plaintiff included a copy of the order vacating the default judgment against him, and his previous dispute letters, as well as, the documents that were attached to his previous dispute letters.

84.     Plaintiff also included a copy of his current credit report.

85.     Plaintiff requested that Equifax delete the judgment that was vacated by Honorable Ann Leslie Alton.

86.     On or about March 27, 2014, Plaintiff attempt to refinance his mortgage.

87.     The credit report used for the refinance by his lender indicated that Trans Union, and Equifax were still reporting the $149, 435.30 on his credit report, and failed to remove the judgment in response to Plaintiff's latest dispute letter.

88.     The credit report also indicated that Experian was still reporting the fraudulent GECRB account and the two fraudulent accounts with Cellco Partnership on his credit report and failed to remove the derogatory accounts in response to Plaintiff's latest dispute letter.

89.     Plaintiff was denied the opportunity to refinance his mortgage because the inaccurate, derogatory and fraudulent credit accounts there were being reported on his credit reports.

90.     As a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to his credit rating, and emotional distress.

91.     As a result of Defendants' actions and omissions, Plaintiff has suffered emotional

distress and severe anxiety in his dealings with Defendants.

### TRIAL BY JURY

92.     Plaintiff is entitled to and hereby demands a trial by jury. US Const. Amend. 7.

Fed. R. Civ. Pro. 38.

### CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681C-2(a) AND (b)
### EXPERIAN, TRANS UNION, EQUIFAX AND CSC

93.     Plaintiff incorporates by reference all preceding paragraphs as through fully stated

herein.

94.     Defendants Experian, Trans Union, Equifax and CSC failed to block the reporting

of information Plaintiff identified as information that resulted from identity theft.

95.     Defendants Experian, Trans Union, Equifax, and CSC failed to inform GECRB,

Cellco Partnership, and Comenity of the information Plaintiff reported was the

result of identity theft.

96.     Defendants Experian, Trans Union, Equifax and CSC willfully and/or negligently

failed to comply with the requirements    imposed under 15 U.S.C. 1681c-2(a) and

(b).

97.     As a result of this conduct, action and inaction of Defendants Experian, Trans

Union, Equifax, and CSC, Plaintiff suffered damage by loss of credit, loss of the

ability to purchase and benefit from credit, the  mental  and  emotional  pain  and

anguish and the humiliation and embarrassment of credit denials.

98.     Said Defendants' conduct, action and inaction was willful and/or negligent,

rendering it liable for punitive damages in an amount to be determined by the jury

in accordance with 15 U.S.C. §§ 1681n and 1681o.


### COUNT II.

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) AND 1691i**
**EQUIFAX, CSC, TRANS UNION, AND EXPERIAN**

99.     Plaintiff incorporates by reference all preceding paragraphs as though fully stated

herein.

100.    Defendants Equifax, CSC, Trans Union, and Experian willfully and/or negligently

violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure

the maximum possible accuracy of Plaintiff's consumer reports.

101.    Defendants Equifax, CSC, Trans Union, and Experian willfully and/or negligently

violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing

to  conduct  a  reasonable  reinvestigation  of  Plaintiff's  dispute(s),  be  reinserting

inaccurate credit information, and by failing thereafter to appropriately delete or

modify information in Plaintiff's file.

102.    As a result of said Defendants' violations of §§ 1681e(b) and 1681i, Plaintiff has

suffered actual damages, including without limitation credit denials, out-of-pocket

expenses, detriment to his credit rating, and emotional distress.  Plaintiff is

therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

103.   Said Defendants' actions and omission were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

## COUNT III:

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)
## GECRB, COMENITY, CELLCO PARTNERSHIP

104.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

105.   Defendants GECRB, Comenity, and Cellco Partnership willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of the Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or by failing to appropriately report the results of their investigations, and/or by failing to appropriately modify, delete, and/or block the information.

106.   As a result of said Defendants' violations of § 1681s-2(b), Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket expenses, detriment to his credit rating, and emotional distress.  Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

107.   Said Defendants' actions and omission were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

108.   Plaintiff is entitled to recover costs and attorney's fees from Defendants GECRB,

Comenity, and Cellco Partnership pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IV.

### CREDIT DEFAMATION
### ALL DEFENDANTS

109.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated

herein.

110.   Defendants' foregoing actions and omissions, including but not limited to

reporting errors on Plaintiff's credit reports, constitute credit defamation.

111.   Defendants' foregoing actions and omissions were intentional and malicious.

112.   As a result of Defendants' intentional and malicious credit defamation, Plaintiff

has suffered actual damages, including without limitation credit denials, out-of-

pocket expenses, detriment to his credit rating and emotional distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter the

following judgment, in Plaintiff's favor:

- Plaintiff's actual damages;
- Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;
- Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o;
- Such other and further relief as may be just and proper.

Dated:  April 18, 2013.                         **MARSO AND MICHELSON, P.A.**

By:   s/Patrick L. Hayes
        Patrick L. Hayes (0389869)
        William C. Michelson (129823)
        Attorneys for Plaintiff
        3101 Irving Avenue South
        Minneapolis, Minnesota 55408
        Telephone: 612-821-4817
        phayes@marsomichelson.com
        bmichelson@marsomichelson.com