# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL TUAN DAO, | Civil No. 14-1219 (JRT/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CELLCO PARTNERSHIP, *doing business as Verizon Wireless*, | |
| Defendant. | |

Marcus J. Hinnenthal and William C. Michelson, **MARSO & MICHELSON, P.A.**, 3101 Irving Avenue South, Minneapolis, MN 55408, for plaintiff.

Peter W. Wanning and Jeffrey R. Peters, **HKM LAW GROUP**, 30 East Seventh Street, Suite 3200, St. Paul, MN 55101, for defendant.

Plaintiff Michael Tuan Dao brought this action against Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"), alleging that Verizon negligently and/or willfully violated § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") by failing to properly investigate and notify consumer reporting agencies of fraudulent Verizon accounts appearing on his credit reports. Dao also alleges that Verizon defamed his credit. Because of Verizon's alleged conduct, Dao contends that he was denied credit, suffered emotional distress, incurred out-of-pocket expenses, and suffered harm to his credit rating. Dao seeks recovery for actual, statutory, and punitive damages, as well as attorney's fees and costs. Verizon now moves for summary judgment. Because Dao has failed to present sufficient evidence of actual damages, causation, or willful violations of

the FCRA, and also because Dao has withdrawn his credit defamation claim, the Court will grant Verizon's summary judgment motion in its entirety.

**BACKGROUND**

In November 2010, Dao learned that his brother, Dien Dao, fraudulently used his identity to apply for and open various lines of credit. Dao reported this identity theft to the Minneapolis Police Department and the Department generated a police report on December 1, 2010. (Aff. of Peter W. Wanning ("Wanning Aff."), Ex. B at 2, Apr. 1, 2015, Docket No. 61.) Shortly thereafter, in late 2010 or early 2011, Dao learned that two fraudulent Verizon accounts[1] had been opened in his name, again without his knowledge or permission. (*Id.*, Ex. A ("Dao Dep.") at 38:1-25.)[2] On or around January 7, 2011, Dao contacted a customer service representative at Verizon by telephone to report the fraud and to dispute the accounts. (*Id.* at 38:13-25.) The representative advised Dao to file a police report. (*Id.* at 39:1-9.) Dao subsequently contacted the Minneapolis Police Department and was told that the information would be added to his earlier report. (*Id.* at 39:13-40:5.)

In December 2011, Dao sent letters to Experian, TransUnion, Equifax, and CSC Credit Services ("CSC")[3] to report that his identity had been stolen and to request the

---

[1] The Verizon accounts will be referred to herein as 7770 and 7880. (Wanning Aff., Ex. F at 15-16.)

[2] All page numbers cited in Dao's deposition refer to the transcript pagination. For all other record citations, the page numbers refer to CM/ECF pagination.

[3] Although the record is not clear, CSC and Equifax appear to be either closely affiliated or the same company. Because the parties do not dispute this point and it does not affect the analysis, the Court will treat Equifax and CSC as interchangeable entities.

deletion of various accounts listed on his credit reports, including the Verizon accounts. (Wanning Aff., Ex. C at 4; Compl. ¶¶ 22-25, 39-42, 55-58, April 22, 2014, Docket No. 1.) After conducting investigations and re-investigations, both Experian and TransUnion declined to delete the Verizon accounts. (Wanning Aff., Ex. I at 16-19; Compl. ¶¶ 26-38, 59-68.)

Equifax and CSC, on the other hand, deleted the Verizon accounts shortly after receiving Dao's letters. In a letter dated January 13, 2012, CSC informed Dao that the Verizon accounts no longer appeared on his Equifax credit report. (*Id.*, Ex. D at 6.) The parties do not dispute that at all times after January 13, 2012, Equifax did not report the Verizon accounts. The parties also do not dispute that at some time between Dao's initial December 2011 letter to Equifax and CSC's above-cited response letter, Equifax notified Verizon that Dao had formally disputed the accounts.

Over two years later, on March 27, 2014, Dao applied for mortgage refinancing with PrimeLending. Several days later, on March 31, 2014, PrimeLending denied Dao's application. (*Id.*, Ex. F at 12.) On or around that date, PrimeLending sent Dao three documents, titled "Statement of Credit Denial, Termination or Change" ("Denial Letter"), "Residential Merged Credit Report" ("Merged Report"), and "Your Credit Score and the Price You Pay for Credit" ("Credit Score Letter"). (*Id.* at 12-18; Aff. of Michael T. Dao ("Dao Aff."), Ex. 1 at 13-14, Apr. 22, 2015, Docket No. 65.)

In the Denial Letter, PrimeLending informed Dao that his application was denied. (Wanning Aff., Ex. F at 12.) PrimeLending noted that its "[p]rincipal reason(s)" for denying his application were that Dao had been the subject of a "[c]ollection action or judgment" and had "[e]xcessive obligations in relation to income." (*Id.*) Importantly,

- 3 -

PrimeLending also wrote that its decision was based on information obtained from Dao's Equifax credit report. (*Id.* at 13.)

The Merged Report, prepared by a company called Kroll Factual Data Bureau, contains credit information on Dao compiled from Equifax, Experian, and TransUnion. (*Id.* at 14-18.) In the report, both disputed Verizon accounts are listed under a heading titled "Credit History." (*Id.* at 15-16.) The 7770 account is listed as having been sent to collection. (*Id.* at 16.) The 7880 account is listed as being past due and as having been sent to collection. (*Id.* at 15.)

The third document, the Credit Score Letter, provides information about Dao's Equifax credit score and report. (Dao Aff. at 13-14.) At the top of the document, there is a "Report ID" number: F4401BXC8053782. (*Id.* at 13.) This number also appears on the Merged Report. (Wanning Aff., Ex. F at 14.)

After being denied refinancing from PrimeLending, Dao submitted no other applications for credit. (Dao Dep. at 85:8-9.)

On April 22, 2014, Dao commenced this action against Verizon and several other parties. (Compl. at 18.) Dao subsequently agreed to dismiss his claims against all other defendants, leaving Verizon as the sole remaining party. In the complaint, Dao alleges that Verizon negligently and/or willfully violated § 1681s-2(b) of the FCRA by failing to properly investigate and failing to notify consumer reporting agencies of fraudulent Verizon accounts appearing on his credit report. (*Id.* ¶ 105.) Dao also alleges that Verizon willfully and maliciously defamed his credit. (*Id.* ¶¶ 110-12.) As a result, Dao contends that he was denied credit, suffered emotional distress, incurred out-of-pocket expenses, and suffered detriment to his credit rating. (*Id.* ¶¶ 106, 112.) Dao seeks actual,

statutory, and punitive damages, as well as attorney's fees and costs. (*Id.* ¶¶ 106-08, 112.) Verizon has moved for summary judgment on all claims. (Def.'s Mot. for Summ. J., Apr. 1, 2015, Docket No. 58.)

**ANALYSIS**

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II. SECTION 1681s-2(b) CLAIM

When a furnisher of credit information, such as Verizon, receives notice from a credit reporting agency that a consumer has disputed the accuracy of credit information reported by the furnisher, the furnisher has a duty under the FCRA to take the following actions:

> (A) conduct an investigation with respect to the disputed information; [and]
> . . .
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .

15 U.S.C. § 1681s-2(b)(1)(A), (D).

If the furnisher is "**negligent** in failing to comply with" the above requirements, the relevant consumer may recover "any actual damages sustained . . . as a result of the failure" as well as "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681o(a)(1)-(2) (emphasis added).  Actual damages can include a credit denial.  *See Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1242 (D. Minn. 2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014). Emotional distress can also be a basis for actual damages. *See Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013).  Alternatively, if the furnisher "**willfully** fails to comply with" the above requirements, the consumer may recover not only actual damages and costs and attorney's fees, but also statutory and punitive damages.  15 U.S.C. § 1681n(a)(1) (emphasis added).  Importantly, "[a]ctual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." *Schaffhausen*

*v. Bank of Am. N.A.*, 393 F. Supp. 2d 853, 859 (D. Minn. 2005) (alteration in original) (quoting *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)).

To overcome Verizon's motion for summary judgment, Dao "must present evidence that [Verizon negligently] failed to comply with the provisions of § 1681s-2 [and] must . . . present evidence of harm and causation, or willfulness entitling him to statutory or punitive damages [under § 1681n]." *Id.* at 858 (second alteration in original) (quoting *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1114 (D. Minn. 2004)). Without even reaching the question of whether Verizon acted negligently, the Court will grant summary judgment for Verizon because Dao has failed to present sufficient evidence of actual damages, causation, or willful violations of the FCRA.

### A. Actual Damages and Causation

Dao alleges the following actual damages: (1) denial of mortgage refinancing by PrimeLending; (2) emotional distress, including a broken engagement; (3) out-of-pocket expenses, and (4) a decline in his credit rating. The Court will grant summary judgment for Verizon because Dao has not shown that Verizon caused these injuries.

#### 1. Credit Denial

Dao first argues that he was denied mortgage refinancing with PrimeLending because of Verizon's failure to investigate and report the fraudulent accounts. Specifically, Dao contends that PrimeLending relied on the Verizon accounts in determining that he was not credit-worthy. According to Dao, had Verizon complied with the FCRA, the accounts would not have appeared on any of his credit reports, and

PrimeLending would have accepted his application. To support this argument, Dao cites the Merged Report. In the "Credit History" section, both Verizon accounts are listed as being sent to collection. Dao argues that this report, and the presence of the accounts, creates a genuine issue of material fact as to whether Verizon's actions or inactions influenced PrimeLending's decision. The Court, however, finds this argument to be unavailing. PrimeLending's own Denial Letter, which it sent to Dao only a few days after he submitted his application, unequivocally indicates that it did not rely on the Merged Report. In that letter, PrimeLending wrote that it based its denial decision on Dao's Equifax credit report, a source that indisputably did not list the Verizon accounts.

Dao asks the Court to disregard PrimeLending's stated foundation and instead draw the opposite inference that because PrimeLending sent Dao the Merged Report and because it listed the Verizon accounts, a reasonable jury could find that PrimeLending based its decision, at least in part, on the Verizon accounts. The Court declines to draw this inference. Dao has offered no foundational testimony from anyone at PrimeLending regarding how it makes its credit decisions or whether it considered the contents of the Merged Report. Absent such foundational evidence, the Court finds that the mere existence of the report is insufficient to create a genuine issue of material fact.

Dao raises three arguments in an attempt to circumvent what the Denial Letter makes clear. First, Dao asks the Court to infer that similar language found in both the Denial Letter and the Merged Report shows that PrimeLending relied on the latter document in arriving at its denial decision. In the Denial Letter, Dao notes that PrimeLending checked a box listing "[c]ollection action or judgment" as a principal reason for why his application was denied. And, in the Merged Report, only two

- 8 -

accounts are listed as having been sent to collection – the Verizon accounts. Thus, according to Dao, even if PrimeLending relied on his Equifax credit report – which did not contain the Verizon accounts – the use of the phrase "collection action" in the Denial Letter indicates that PrimeLending must have also relied on either the Merged Report or a credit report from Experian or Trans Union; these are the only sources from which PrimeLending could have learned about "collection actions" against Dao.

The Court rejects this argument for three reasons. First, the language "[c]ollection action or judgment" mirrors summary language provided by Equifax on the very next page of the Denial Letter: "Derogatory Public Record or Collection Filed." (Wanning Aff., Ex. F at 13.) Accordingly, the presence of the words "collection action" does not necessarily mean that PrimeLending relied on a source besides Equifax. Second, Dao ignores the other portion of the relevant phrase "[c]ollection action **or judgment**." PrimeLending's decision equally could have been based on a judgment. Indeed, as of August 12, 2013, Equifax was reporting a $149,000 judgment against Dao. (*Id.*, Ex. F at 15.). This judgment also appeared on the Merged Report. (*Id.*, Ex. H at 14.) Third, Dao has provided no evidence that his Experian or TransUnion credit reports even contained the Verizon accounts at the time PrimeLending would have accessed them. Evidence in the record, however, shows that on August 12, 2013 – approximately seven months prior to Dao's PrimeLending application – TransUnion was not listing the Verizon accounts. (*Id.*, Ex. H at 11-12.) Therefore, even assuming for the sake of argument that PrimeLending considered credit reports from Experian or TransUnion, Dao has offered scant evidence that either one listed the Verizon accounts. In sum, a reasonable jury

could not find, on the basis of a single line – "[c]ollection action or judgment" – that PrimeLending reviewed a source containing the Verizon accounts.

Dao next points out that the Merged Report and Credit Score Letter share a common identification number. Dao argues a reasonable jury could infer from this shared number that the Verizon accounts played a role in PrimeLending's refinancing denial. The Court, however, finds that this argument lacks merit. As explained above, Dao has offered no foundational testimony from anyone at PrimeLending regarding its decision-making process, or whether it considered the contents of the Merged Report in this particular instance. Moreover, the Credit Score Letter does not even list the Verizon accounts; to the contrary, it provides information on Dao's Equifax credit report. Thus, a mere common identification number raises no genuine issue of material fact.

Dao's third and final argument is no stronger. Dao asserts that even if PrimeLending did only rely on his Equifax credit report, Equifax, in deriving his credit score, may have utilized information from other credit reporting agencies, thereby indirectly incorporating the Verizon accounts. In other words, Dao suggests that a reasonable jury could conclude that the Verizon accounts caused PrimeLending's denial, even if PrimeLending did not know it. The Court rejects this argument. Dao has offered no foundational evidence from anyone at Equifax regarding how it calculated his credit score. Dao's theory is just that – a theory – and does not give rise to a genuine factual dispute.

Overall, the Court finds that there is no genuine issue of material fact as to whether PrimeLending denied Dao's mortgage refinancing application because of actions or inactions by Verizon. Even drawing all reasonable inferences in favor of Dao, a jury

could not find that PrimeLending relied on or even considered the Verizon accounts. Dao has not connected Verizon to his credit denial.

### 2. Emotional Distress

Dao next asserts that he suffered emotional distress because of Verizon's alleged failure to investigate and report the fraudulent accounts. For the reasons that follow, Dao has again failed to offer sufficient evidence to connect Verizon to this alleged injury.

As noted above, emotional distress is actionable under the FCRA. *Taylor*, 710 F.3d at 828 (citing *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir. 1976)). But, "emotional distress damages must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" *Id.* (quoting *Carey v. Piphus,* 435 U.S. 247, 264 n.20 (1978)). "While an emotional distress injury may be established solely by a plaintiff's own testimony," the testimony must show a "concrete" and "genuine injury." *Edeh*, 974 F. Supp. 2d at 1244. Although not dispositive, courts will also consider whether the plaintiff suffered a physical injury or received medical treatment in connection with the alleged emotional distress. *Taylor*, 710 F.3d at 829.

Here, the Court finds that Dao has not offered evidence of a concrete and genuine emotional injury caused by Verizon. Dao generally asserts that he suffered emotional distress. However, he conceded that he has not seen a medical doctor, psychiatrist, psychologist, mental health professional, spiritual advisor, or counselor; incurred any expenses related to treatment; or missed any work. (Dao Dep. at 49:13-50:23, 52:11-14.) Dao does state that his fiancé broke off the couple's engagement in 2011. (*Id.* at 51:3-

52:7.) But, Dao has offered no evidence to link this loss to Verizon. Importantly, the break-up occurred in 2011, near the time when Dao first discovered the fraudulent Verizon accounts, after he had already discovered numerous other fraudulent accounts opened by his brother, and three years before his only credit denial (which the Court has already found has no connection to Verizon). Based on this timeline, no reasonable jury could find that Verizon had anything to do with Dao's break-up. Dao's conclusory claims of emotional distress – based solely on his own testimony – do not show a concrete and genuine emotional injury and do not give rise to a genuine factual dispute necessitating trial.

### 3. Other Actual Damages

Finally, Dao asserts that he incurred out-of-pocket expenses and suffered detriment to his credit rating because of Verizon's actions and failures to act. Again, the Court finds no genuine issue of material fact.

First, Dao has not offered any evidence showing that he incurred out-of-pocket expenses. Dao admitted in his deposition that he has no documentation to support this claim. (Dao Dep. at 47:20-48:2.). Second, Dao has not put forth any evidence showing that the Verizon accounts negatively impacted his credit rating. In fact, the record suggests the opposite – the accounts had little to no impact on his credit rating. As of August 12, 2013, for example, the Verizon accounts were not listed on his Equifax or TransUnion credit reports. (Wanning Aff., Ex. H at 11-12.) And, as of March 27, 2014, his Experian credit score – the only score that potentially still included the accounts – was actually higher than his Equifax and Experian scores (690 versus 680 and 672). (*Id.*,

Ex. F at 15.)  Dao has offered no evidence to explain this discrepancy.  Altogether, a reasonable jury could not find that Dao incurred out-of-pocket expenses or suffered harm to his credit rating because of Verizon.

### B. Willfulness

Because Dao has failed to establish actual damages and causation, his claim can only survive if he can show that Verizon maliciously or willfully violated § 1681s-2(b).  *See Bakker*, 152 F.3d at 1013 (holding that "[a]ctual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]" (second alteration in original)).  The Court will grant summary judgment for Verizon because Dao has failed to make this showing.

"To show willful noncompliance [under § 1681n], [Dao] must show that [Verizon] knowingly and intentionally committed an act in conscious disregard for the rights of others."  *Edeh*, 974 F. Supp. 2d at 1245 (quoting *Bakker*, 152 F.3d at 1013).  Dao's only evidence of conscious disregard is that the Verizon accounts continued to appear on one or more of his credit reports despite the fact that Verizon received two dispute notices – one from Dao and one from Equifax.  According to Dao, if Verizon had truly conducted a proper investigation and made a proper report, the accounts would have been removed.  While Verizon's purported failure to take action after two notifications may show that it was negligent, the Court finds that this evidence is insufficient to establish that Verizon willfully failed to comply with the FCRA.  Section 1681n requires a showing of conscious disregard, and Dao's evidence does not meet this burden.

### III.  CREDIT DEFAMATION CLAIM

To succeed on a credit defamation claim, a plaintiff must establish that the defendant acted with "malice or willful intent."  15 U.S.C. § 1681h(e); *see Schaffhausen*, 393 F. Supp. 2d at 859-60.  The malice or willful intent that must be shown, however, "requires 'a higher standard of proof than the willfulness required for punitive damages under § 1681n.'"  *Schaffhausen*, 393 F. Supp. 2d at 860 (quoting *Olwell v. Med. Info. Bureau*, No. 01-1481, 2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003).  At the hearing on this motion, Dao informed the Court that he was abandoning his credit defamation claim because he could not offer evidence sufficient to meet this higher standard of proof.  For this reason, the Court will grant summary judgment for Verizon.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 58] is **GRANTED**.  This matter is hereby **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 24, 2015             _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                                  Chief Judge
                                                       United States District Court